UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS CORNELL
JACKSON #748757,

        Plaintiff,

v.

PATRICIA LEWIS,

        Defendant.
_____/

Case No. 2:20-cv-00148

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Douglas Cornell Jackson pursuant to 42 U.S.C. § 1983. Jackson alleges in his verified complaint that he suffers from chronic pain in his stomach, right thumb, index finger, arm, shoulder and neck. (ECF No. 1, PageID.3, 8.) Jackson says that he submitted 33 health care requests between September 9, 2019, and July 16, 2020. (*Id*.) Jackson says that Defendant Nurse Practitioner (NP) Patricia Lewis was aware of his conditions and pain, and that she failed to treat his needs or order an MRI. (*Id*., PageID.4.) He alleges violations of his rights under the Eighth Amendment.

Before the Court is NP Lewis's motion for summary judgment. (ECF No. 48.) Lewis advances two arguments. First, she asserts that Jackson failed to exhaust any grievances against her through Step III of the Michigan Department of Corrections (MDOC) grievance process. And second, she argues that the grievances Jackson did

file did not mention the issues he raises in this lawsuit. In response, Jackson asserts that he should not be required to exhaust his administrative remedies because he was in imminent danger of serious physical injury. (ECF No 62.) He also attached three grievances that he claims shows he exhausted his administrative remedies. In reply, NP Lewis argues that Jackson's three grievances are deficient. (ECF No. 65.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Lewis's motion for summary judgment and dismiss the complaint without prejudice.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

4

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## IV. Grievances Identified by Defendant

In her motion for summary judgment, NP Lewis identified a number of grievances that Jackson filed with MDOC. She claims that a review of these grievances will demonstrate that Jackson has failed to exhaust his administrative remedies on his Eighth Amendment claims. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| AMF-19-08-1791-12e1 (ECF No. 48-1, PageID.369-373.) | Nurse passing meds | Denial of "urgent" health care when requested on 8-22 and 8-26-2019 | 8-26-2019 | Denied because scheduled for medical care visit and nurse passing meds does not do evaluations. | Denied | Denied |
| AMF-19-09-1988-28F (ECF No. 48-1, PageID.365-368.) | NP Lewis and Trudy Duquette | Refusal to provide medical detail for law librarian due to pain in right finger | 9-23-2019 | Rejected | Rejected | Rejected |

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| AMF-19-11-2353-28F (ECF No. 48-1, PageID.361-364.) | Gloria Hill, Kenneth Mattson, Heidi Washington, and D. Krull | Dental care | 11-12-19 | Rejected | Rejected | Rejected |
| AMF-19-12-2466-28F (ECF No. 48-1, PageID.357-360.) | Tammy Talbacka | Should not have to be weighed before receiving dental care | 12-5-2019 | Rejected | Rejected | Rejected |
| AMF-19-12-2480-28F (ECF No. 48-1, PageID.353-356.) | Gloria Hill and NP Lewis | Food trays are not healthy | 12-6-2019 | Rejected | Rejected | Rejected |
| AMF-20-05-0835-28F (ECF No. 48-1, PageID.346-349.) | Heidi Washington and Kris Taskila | Need to test or quarantine AMF staff due to Covid-19 | 5-7-2020 | Rejected | Rejected | Rejected |

## V. Additional Grievances Identified by Jackson

In response, Jackson identified three additional grievances he says that he filed with MDOC. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| AMF-20-07-1153-28F (ECF No. 62-2, PageID.585.) | NP Lewis | Denial of adequate medical care | 7-17-2020 | Unknown | Unknown | Unknown (ECF No. 48-1, PageID.245.) |

9

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| AMF-20-08-1301-28F (ECF No. 62-2, PageID.586.) | Gloria Hill and NP Lewis | Denial of adequate medical care while in segregation | 7-31-2020 | Unknown | Unknown | Unknown (ECF No. 48-1, PageID.243.) |
| AMF 20-08-1469-28F (ECF No. 62-2, PageID.587.) | NP Lewis | Told he would not be called out for health care if he refused a Covid-19 test. | 8-24-2020 | Unknown | Unknown | Unknown (ECF No. 48-1, PageID.243.) |

**VI. Analysis**

NP Lewis argues that Jackson never properly exhausted his Eighth Amendment claims against her before he filed this lawsuit. Jackson argues in response, (1) that the exhaustion requirement is not applicable in this case because the need for judicial intervention to correct the imminent danger of physical harm outweighs the administrative exhaustion requirement, (2) that the grievance procedures are subject to abuse by prison officials, (3) that the grievance process was rendered unavailable to him because the MDOC failed to properly notify him about his placement on modified access to the grievance procedures, and (4) that he did not know NP Lewis's name prior to August 26, 2019.

Jackson's first argument appears to assert that the grievance process was unavailable to him under *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850. However,

Jackson does not explain how the grievance process was unavailable to him. First, 42 U.S.C. § 1997e did not create exceptions to the exhaustion requirement, nor did the statute create a balancing test as proposed by Jackson. The United States Supreme Court did not create Jackson's proposed balancing requirement in *Ross,* where the Court set forth the rare exceptions when the exhaustion requirement is considered unavailable. Second, to the extent that Jackson asserts that he was on modified access to the grievance process, the grievance system was still available to Jackson.

Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances (three within a 30 calendar day span) that are rejected . . . ." Mich. Dep't of Corr., Policy Directive 03.02.130, ¶ JJ. (effective, March 18, 2019). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ MM.

The Sixth Circuit has held that modified access to the grievance process does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. Rather, it merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance. *Walker v. Mich. Dept. of Corrections*, 128

11

Fed. Appx. 441, 444 (6th Cir. 2005); *Hartsfield v. Mayer*, 76 F.3d 378, 1996 WL 43541, \*\*3 (6th Cir. 1996).

In short, Jackson's claim that he should be excused from the exhaustion requirement is meritless.

Jackson also argues that he submitted three grievances naming NP Lewis and that these grievances exhausted his claims that he was not receiving adequate health care treatment. Those grievances are **AMF-20-07-1153-28F, AMF-20-08-1301-28F,** and **AMF 20-08-1469-28F**. (*See* table in Section V.) These Step I grievances were dated between July 17, 2020 and August 24, 2020, and each name NP Lewis. These Step I grievances fail to exhaust Jackson's administrative remedies for two reasons.

First, Jackson failed to properly exhaust these grievances *before he filed his complaint*. Jackson's verified complaint is dated August 14, 2020, and was filed by the Court on August 19, 2020. (ECF No. 1, PageID.8.) Accepting Jackson's assertion that he filed the grievances attached to his response brief[3], those grievances were not fully exhausted through Step III at the time Jackson filed his complaint. Defendant has attached Jackson's MDOC Prisoner Step III Grievance Report to her motion. (ECF No. 48-1, PageID.243-345.) This report lists the following information regarding these grievances:

---

[3]  Defendant points to several reasons why these grievances appear to have never been filed with the MDOC: the grievance identifier number appear to be written in Jackson's handwriting, and the grievances are missing information such as the date received, the response, and signatures.

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/17/2020 | AMF-20-07-1153-28F | 28F | 2 | 7/21/2020 | ☐ | ☐ | ☐ | ☐ | ☐ | |

. . . .

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/17/2020 | AMF-20-08-1469-28F | 28F | 2 | 8/27/2020 | ☐ | ☐ | ☐ | ☐ | ☐ | |

Notes:

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/27/2020 | AMF-20-08-1301-28F | 28F | 2 | 8/3/2020 | ☐ | ☐ | ☐ | ☐ | ☐ | |

(ECF No. 48-1, PageID.243, 245.)

This report states that Jackson's Step III appeals for these grievances were submitted on August 17 and 27, and September 17, 2020. Jackson's verified complaint is dated August 14, 2020. Thus, Jackson failed to properly exhaust these claims prior to filing his complaint.

Second, because Jackson's complaint asserts that NP Lewis was deliberately indifferent to his health care needs between September 9, 2019, and July 16, 2020, these grievances are not relevant to Jackson's complaint. In grievance **AMF 20-08-1469-28F**, Jackson asserted that, on August 24, 2020, he was required to take a Covid-19 test before he could receive health care. Thus, that grievance is not relevant to the allegations in Jackson's complaint. The other two grievances list incident dates after the time period alleged in the complaint. In grievance **AMF-20-07-1153-28F**, Jackson asserted that he was denied health care on July 17, 2020, and in grievance **AMF-20-08-1301-28F** Jackson asserts that he was denied health care on July 31, 2020. Neither of these grievances are relevant to Jackson's complaint because the

13

dates fall outside of the date range of the alleged misconduct. In his complaint Jackson alleged:

> (1) MR. DOUGLAS JACKSON, SUFFERS FROM CHRONIC STOMACH, RIGHT THUMB, INDEX FINGER, ARM, SHOULDER, AND NECK PAIN. HE HAS SUBMITTED 33 HEALTH CARE REQUEST REGARDING THE PAIN AND PROBLEMS/SYMPTOMS. BEGINNING SEPT. 9, 2019 THROUGH JULY 16, 2020. (REVIEW HEALTH CARE REQUEST FORMS CHJ-549, ATTACHED AS EXHIBIT 1.)

(ECF No. 1, PageID.3.)

It should also be noted that these grievances contradict Jackson's assertion that he did not know NP Lewis's name prior to August 26, 2020. Jackson was aware of NP Lewis's name at least as early as July 17, 2020, and before he filed his complaint in this matter. (ECF No. 62-2, PageID.585.)

Finally, none of the grievances that NP Lewis addressed in her motion raised issues that are relevant to the claims in Jackson's complaint. In the two grievances in which Jackson did name NP Lewis – (**AMF-19-09-1988-28F** and **AMF-19-12-2480-28F**) – those grievances were not properly exhausted because they were rejected at each step.

### VII. Recommendation

The undersigned respectfully recommends that this Court grant Defendant NP Lewis's motion for summary judgment (ECF No. 48) and dismiss the complaint without prejudice due to Jackson's failure to exhaust his administrative remedies.

Dated: May 18, 2021   /s/ *Maarten Vermaat*
　　　　　　　　　　　　MAARTEN VERMAAT
　　　　　　　　　　　　U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).